IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Raymond Doricchi, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> County of Greenville, Greenville County ) <br> Sheriff's Department, Steve Loftis, ) <br> and Jeremy Jones, ) <br> ) <br> Defendants. ) <br> ) | Civil Action No. 6:17-cv-1636-TMC <br><br> **ORDER** |

Plaintiff, Raymond Doricchi ("Doricchi"), with the assistance of counsel, filed this action in the Greenville County Court of Common Pleas pursuant to the South Carolina Tort Claims Act ("SCTCA"), 42 U.S.C. § 1983, and 42 U.S.C. § 1981. (ECF No. 1-1). Defendants removed the action to federal court. (ECF No. 1). On November 12, 2018, Defendant Jeremy Jones ("Jones") filed a motion for summary judgment. (ECF No. 29). Plaintiff responded to the motion (ECF No. 31), and Jones replied (ECF No. 37). On November 13, 2018, Defendants County of Greenville, Greenville County Sheriff's Department, and Steve Loftis ("County Defendants") filed a motion for summary judgment. (ECF No. 30). Plaintiff responded to the motion (ECF No. 35), and County Defendants replied (ECF No. 39).

Pursuant to 28 U.S.C. § 636(b) and District of South Carolina Local Civil Rule 73.02(B)(2), this case was referred to a magistrate judge for all pre-trial proceedings. The magistrate judge conducted a hearing on both motions for summary judgment on February 27, 2019. (ECF No. 42). Following the hearing, the magistrate judge issued a Report and Recommendation ("Report"), which is now before this court. The Report recommends that the court deny Jones's motion for summary judgment (ECF No. 29); dismiss all federal claims

1

against the County Defendants pursuant to the parties' stipulation; and deny in part and grant in part the County Defendants' motion for summary judgment (ECF No. 30). (ECF No. 44). The magistrate judge alerted the parties of their right to file objections. *Id.* at 19. Jones filed timely objections (ECF No. 47), but no other party filed objections to the Report. Plaintiff filed a response to Jones's objections, stating that he "requests that this Court adopt the Report and Recommendations in its entirety." (ECF No. 50 at 1). The time for objections has now run.

## I. Facts

According to Plaintiff, on May 10, 2015, he was walking down Highway 290 with a friend and was carrying a machete in one hand and a dead snake in the other. (ECF No. 1-1 at 4). When Defendant Jones, a deputy sheriff, pulled up and ordered Plaintiff to drop the weapon, Plaintiff admits that he ran away from Jones and that Jones pursued him. *Id.* at 4–5. Plaintiff contends that he eventually gave up on running from Jones and raised his hands in the air to surrender. *Id.* at 5. In the process of the arrest, Plaintiff states that Jones unnecessarily broke his arm. *Id.* Plaintiff contends that at no point after he raised his hands in the air did he fight Defendant Jones or do anything that would cause Jones to fear imminent bodily harm. *Id.* Plaintiff also alleges that after breaking his arm, Jones stated, "You shouldn't have run, you son of a bitch. I'm a professional arm bar fighter." *Id.*

Jones's account of the arrest is vastly different. Jones contends that when he arrived on the scene, he asked Plaintiff to come speak to him, to which Plaintiff responded with profanity. (ECF No. 29-1 at 2). Jones states that he then drew his weapon and asked Plaintiff to drop the machete, which he did. *Id.* Having noticed that Plaintiff appeared to be under the influence of illegal substances, Jones states that he alerted Plaintiff that he was under arrest. *Id.* According to Jones, upon hearing that he was under arrest, Plaintiff fled the scene, and Jones pursued him. *Id.*

After chasing Plaintiff for some ways, Jones states that he was able to tackle Plaintiff but that Plaintiff continued to resist. *Id.* Jones alleges that he was required to administer "close-fisted" strikes to Plaintiff's back and head to attempt to subdue Plaintiff. *Id.* Subsequently, Jones drew his weapon and ordered Plaintiff to give him his hands or he would shoot. *Id.* at 3. According to Jones, it appeared Plaintiff was trying to "push up" and get up off the ground. *Id.* Jones claims that at that time, he holstered his weapon and grabbed Plaintiff's right arm, placing it in an arm bar. *Id.* He then placed one knee on Plaintiff's back and the other on Plaintiff's shoulders. *Id.* He states that he "braced Plaintiff's arm, bent Plaintiff's wrist, and started applying pressure with every command" but that Plaintiff continued to resist. *Id.* Jones contends that during the struggle, Plaintiff's arm was injured. *Id.* Eventually, Jones was able to handcuff Plaintiff and roll him into a recovery position. *Id.*

Dean Bryant ("Bryant"), the owner of the property where the arrest took place, testified at his deposition that he witnessed the events surrounding the arrest. (ECF No. 29-4 at 5–6). Bryant testified that when he saw Jones and Plaintiff, they were on the ground "wrassling (sic)." *Id.* at 9. Bryant asked Jones if he should call for help, and Jones nodded. *Id.* at 10. Bryant then called 911. (ECF No. 31-3 at 9). Meanwhile, Jones was able to subdue Plaintiff and get his arms behind his back. *Id.* at 10. Bryant then saw Jones sit Plaintiff up. *Id.* Though he was not far away from the scene of the arrest, Bryant states that he could not hear what was being said over the sound of his lawnmower. *Id.* at 13. However, he does remember Jones "hollering" at Plaintiff. *Id.*

Another witness, Michael Johnson ("Johnson"), who was walking with Plaintiff on the road prior to Plaintiff's encounter with Jones, testified by sworn statement stating that he observed Plaintiff either trip or be tackled by Jones and then saw Jones hit Plaintiff in the head seven or eight times. (ECF No. 31-4 at 2 – 4). Johnson states that Plaintiff then remained face-

3

down on the ground and did not fight or resist Jones. *Id.* at 3. Johnson states that, after Plaintiff was arrested, another police officer asked Johnson what had happened, to which Johnson responded that he had "seen one of [the] deputies beat up [his] friend." *Id.* at 4. Johnson states that the officer told him that they would not need his statement. *Id.*

A final witness, Thomas Gowens ("Gowens"), who lived in the area, gave a sworn statement that he saw two men (later identified as Plaintiff and Johnson) walking on the shoulder of the road. (ECF No. 31-5 at 1). Gowens then saw Jones skid his car to a stop in the intersection, get out of the car, and point his gun at Plaintiff. *Id.* at 2. He then saw Plaintiff drop the machete. *Id.* Gowens states that he was "close enough that [he] should have been able to hear anything the deputy and the man said to each other" but did not "hear the deputy tell the man that he was under arrest." *Id.* at 3. Gowens states he saw Plaintiff run down the road and behind a house, and Jones chased him. *Id.* At that point, Gowens lost sight of Plaintiff and Jones. *Id.* Eventually, other Greenville County deputies and an ambulance arrived. *Id.*

After his arrest, Plaintiff was taken to the hospital for treatment and then transported to Greenville County Detention Center. (ECF No. 1-1 at 5). Plaintiff was charged with possession of drug paraphernalia, possession of methamphetamine, giving false information to law enforcement, resisting arrest, and disorderly conduct. (ECF Nos. 30-3 at 17–22; 30-6; 30-7). Plaintiff pled guilty to resisting arrest and possession of methamphetamine, and his other charges were dismissed. (ECF Nos. 30-3 at 17–22; 30- 6; 30-7).

Plaintiff then brought this action alleging that Defendant Jones violated his constitutional rights and that County Defendants were also liable for such violations pursuant to the South Carolina Tort Claims Act. (ECF No. 1-1).

4

## II. Legal Standard

Summary judgment is appropriate if, after reviewing the entire record in a case, the court is satisfied that no genuine issues of material fact exist and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Issues of fact are "material" only if establishment of such facts might affect the outcome of the lawsuit under the governing substantive law. *Id.*

## III. Discussion

In his Report, the magistrate judge recommended that, pursuant to the stipulation amongst the parties, all federal claims be dismissed against County Defendants. (ECF No. 44 at 6) (citing (ECF Nos. 30-1 at 1 – 2; 35 at 5)). No party has objected to this recommendation. Finding no clear error, the court adopts this recommendation. Accordingly, all federal claims against County Defendants are dismissed.

Likewise, in his Report, the magistrate judge recommended that County Defendants' motion for summary judgment (ECF No. 30) be granted in part and denied in part. (ECF No. 44 at 17). Specifically, he recommended that the County Defendants' motion be granted with respect to Plaintiff's negligent training/supervision and failure to provide timely medical care claims; granted with respect to Plaintiff's SCTCA excessive force claim against Defendants County of Greenville and Loftis; and denied with respect to the SCTCA excessive force claim as to Defendant GCSD. *Id.* Having heard no objections to these recommendations and finding no clear error, the court adopts these recommendations.

As to Defendant Jones's motion for summary judgment (ECF No. 29), the magistrate judge concluded that there are genuine issues of material fact that preclude the entry of summary

judgment as to the excessive force claim and as to whether Jones is entitled to qualified immunity. (ECF No. 44 at 8–13). In his objections, Jones argues that the magistrate judge erred in determining that there are genuine issues of material fact for purposes of qualified immunity and that the magistrate judge should have excluded or addressed the timeliness issue of the affidavits of Gowens and Johnson. (ECF No. 47).

Because the magistrate judge relied in part on the affidavits of Gowens and Johnson in reaching the conclusions on summary judgment and qualified immunity, the court finds it appropriate to address this objection first. Jones argues that Gowen's affidavit should be excluded because it was submitted after the discovery deadline and because Gowens was not disclosed as a witness until November 27, 2018. (ECF No. 47 at 10). Additionally, Jones contends that Johnson's affidavit should be excluded because Johnson was not disclosed as a witness until after Plaintiff's deposition, and Jones's attorney was not able to serve Johnson with a suppoena for his deposition. *Id.* at 47. Additionally, Jones argues that both Johnson's and Gowen's affidavits were not signed until three years after the incident, whereas his own witness's affidavit was signed on the day of the incident. *Id.* at 47–48.

However, in this case, assuming the affidavits were untimely submitted, beyond making a blanket statement that the affidavits should be excluded for purposes of this motion for summary judgment, Jones provides no authority mandating the exclusion of the affidavits. *See, e.g., Gilmore v. RDIC, LLC*, No. 2:14-cv-689-MHT-PWG, 2016 WL 26011893, at *2 (M.D. Ala. April 1, 2016) ("Plaintiff offers no citation to authority to support her proposition that this court is barred from considering an affidavit submitted after a discovery deadline but contemporaneously with a filing in opposition to a motion for summary judgment."); *Cruzata v. Wal-Mart Stores, Texas, LLC*, No. EP-13-CV-00331-FM, 2015 WL 1980719, at *6 (W.D. Tex.

May 1, 2015) (considering untimely affidavits in ruling on a motion for summary judgment because defendant did not provide any authority to show that they must be excluded). Furthermore, the court notes that while Jones has asked in his reply to the response in opposition (ECF No. 39) and in his objections (ECF No. 47) that the court exclude the affidavits for purposes of ruling on this motion, Jones did not file a motion to strike the affidavits.

In fact, instead of moving to strike, after receiving Gowens's affidavit in November 2018, Jones issued a subpoena and notice of deposition on Gowens. (ECF No. 40-1). Additionally, Jones admits that he attempted to serve a subpoena and notice a deposition on Johnson, but his process server was unable to locate him. (ECF No. 37-1). Furthermore, the court notes that both parties have seemed to disregard the scheduling order deadlines. The depositions of Plaintiff, Jones, and Bryant were conducted on October 16, 2018, which was after the deadline for discovery. *Compare* (ECF No. 23) *with* (ECF Nos. 35-1; 35-2; 35-3). Additionally, Jones did not file his Identification of Expert Witnesses until three days after the deadline to do so had run. *Compare* (ECF No. 23) *with* (ECF No. 28). Accordingly, given the fact that both parties have missed deadlines and the absence of cited authority requiring this court to disregard the affidavits in question, the court finds that the magistrate judge did not err in considering the affidavits of Johnson and Gowens when reviewing the motion for summary judgment. Accordingly, this objection is overruled.

Additionally, Jones argues that the magistrate judge failed to address the fact that Plaintiff has not named an expert witness and that absent expert witness testimony, Plaintiff "cannot establish the requisite standard in an excessive force case." (ECF No. 47 at 11). Jones cites no case law in his objections to support this assertion. In his motion for summary judgment, Jones cites to *Clem v. Corbeau*, 98 Fed. App'x 197, 201 (4th Cir. 2004), for the contention that

Plaintiff should have produced an expert witness. However, *Clem* did not state that expert witnesses were required in cases of excessive force. Instead, the Fourth Circuit noted that because of the specialized knowledge involved in the "reasonable officer" standard, "an expert witness *can* assist the jury in understanding." *Clem*, 98 Fed. App'x at 201 (emphasis added). Additionally, the *Clem* court noted that the usefulness and admissibility of expert testimony would depend on the facts of each individual case. *Id.* In fact, the *Clem* court actually affirmed the district court's decision to exclude expert testimony in the excessive force case at issue. Accordingly, the court overrules the objection.

Jones also contends that the magistrate judge erred in determining that there is a genuine issue of material fact as to whether qualified immunity should apply.[1] (ECF No. 47 at 1–9). Qualified immunity protects government officials from civil liability and suit for "conduct [that] does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). It protects law enforcement officers from "bad guesses in gray areas" and ensures that they are liable only "for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992).

In addressing qualified immunity, the Supreme Court has formulated a two-prong test under which "a court must determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and determine whether that right was clearly established at the

---

[1] The magistrate judge properly noted that "when the resolution of the qualified immunity question as well as the case itself depends upon a determination of what actually happened, the court must deny summary judgment on the grounds of qualified immunity." (ECF No. 44 at 12) (citing *Buonocore v. Harris*, 65 F.3d 347, 359 (4th Cir. 1995); *Hinojos v. Bowers*, C/A No. 2:14-cv-01800-DCN, 2015 WL 4878812, at *8 (D.S.C. Aug. 14, 2015)). However, because Jones's objections go directly to whether the issues of fact are material, and, therefore, whether the factual dispute affects the analysis of summary judgment and qualified immunity, the court has addressed the issue of qualified immunity herein. Finding there to be genuine issues of material fact as to the issue of qualified immunity, the court, as it must, denies Jones's summary judgment motion.

time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999). With respect to the second step, "[t]he relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was lawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). A court has discretion to decide which step of the two-prong test to analyze first. *Pearson v. Callahan*, 555 U.S. 223, 242 (2009). The answers to both prongs must be in the affirmative for a plaintiff to defeat a motion for summary judgment on qualified immunity grounds. *Batten v. Gomez*, 324 F.3d 288, 293-94 (4th Cir. 2003). The plaintiff bears the burden of proof on the first prong, *Bryant v. Muth*, 994 F.2d 1082, 1086 (4th Cir. 1993), and the defendant bears the burden on the second prong, *Wilson v. Kittoe*, 337 F.3d 392, 397 (4th Cir. 2003).

As for the first prong, the magistrate judge correctly noted (ECF No. 44 at 8), claims alleging excessive force in the course of an arrest or other "seizure" of a free citizen are characterized as invoking the protections of the Fourth Amendment, which guarantees citizens the right to be secure from unreasonable seizures and must be judged by reference to the Fourth Amendment's reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 394 – 95 (1989). In applying the reasonableness standard, the court must provide "careful attention to the facts and circumstances" of that particular case, including the "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396 (citations omitted). Additionally, because the standard is one of objective reasonableness, the officer's particular intentions or any ill will not affect a use of force that is otherwise objectively reasonable. *Id.* at 397.

Jones focuses his objections on this first prong, arguing that there is no genuine dispute of material fact that his actions were objectively reasonable. (ECF No. 47). He contends that "[c]ourts in other districts have granted summary judgment where the parties present differing versions of the facts." *Id.* at 2. First, none of the cases to which Jones refers are binding upon this court. Second, in each of the cases on which Jones relies, the court found that the discrepancies with the facts did not materially affect the conclusion that the officers acted reasonably under the circumstances, and, therefore, did not preclude an entry of summary judgment on qualified immunity grounds. *See Kesinger v. Herrington*, 381 F.3d 1243 (11th Cir. 2004) (finding that though there were discrepancies in the facts, they were not material and did not affect the court's conclusion that the officers acted reasonably); *Patterson v. Randazzo*, 160 F. Supp. 3d 849 (M.D.N.C. 2016) (finding officers were entitled to qualified immunity because they could have viewed plaintiff as a continuing deadly threat after he exchanged gunfire with them after a bank robbery, even though plaintiff stated he was trying to surrender when he was shot).

However, in this case, the court notes that the discrepancies in the case go directly to whether Jones acted reasonably, and, thus, go directly to whether qualified immunity is appropriate. Here, Plaintiff contends that prior to Jones reaching him in the pursuit[2], he attempted to surrender. (ECF Nos. 1-1; 31-1 at 16). Jones contests this. (ECF No. 31-2 at 17). Bryant, Jones's eyewitness, specifically stated in his deposition that Jones and Plaintiff were "already on the ground" by the time he noticed them. (ECF No. 31-3 at 6–7).

Likewise, the parties dispute what happened after Jones and Plaintiff were on the ground. Both Plaintiff and Johnson contend that Plaintiff did not put up a fight or resist once Jones reached him. (ECF Nos. 31-1 at 18; 31-4 at 3). By contrast, Jones and Bryant allege that Plaintiff

---

[2] Notably, Plaintiff contradicts himself in the record. In his Complaint, Plaintiff alleges that he got down on the ground to surrender. In his deposition, he claims that he held his hands in the air and was subsequently tackled by Jones. In any event, Jones eventually reached Plaintiff and attempted an arrest.

continued to resist arrest and that a struggle ensued. (ECF Nos. 31-2 at 17–20; 31-3 at 6–10). The credibility of these statements is an issue best suited for a jury. *See United States v. Beidler*, 110 F.3d 1064, 1067 (4th Cir. 1997) (stating that credibility determinations are for the trier of fact, not the reviewing court). Accordingly, the court is left with diametrically opposed versions of what occurred. One version is that Plaintiff gave himself up without resisting and the officer still used so much force in making the arrest that he broke Plaintiff's arm. The other version is that Plaintiff continuously resisted arrest, requiring the officer to use force to get Plaintiff into handcuffs, which resulted in Plaintiff's arm being broken. In construing the facts in the light most favorable to Plaintiff, as the court must at the summary judgment phase, the court must consider whether Jones is entitled to qualified immunity in a scenario where Plaintiff surrendered and stopped resisting arrest, but Jones continued to strike Plaintiff and with enough force to break his arm in the process of the arrest.

The court agrees with the magistrate judge that in viewing the facts in a light most favorable to Plaintiff, a trier of fact could conclude from the perspective of a reasonable officer in these circumstances, that Jones applied excessive force in violation of Plaintiff's Fourth Amendment rights. The court notes that Jones states in his objections that "no reasonable officer in Defendant Jones's position could possibly have known the plaintiff's intentions even if he stopped running and raised his hands." (ECF No. 47 at 8). Notably, the alleged surrender is not the only fact that weighed against Jones in applying the *Graham* factors. In assessing the factors set forth in *Graham*, as the magistrate judge did in his Report, the court notes that a reasonable jury could find that Plaintiff was no longer "actively resisting arrest or attempting to evade arrest," and that Plaintiff, who had dropped the machete prior to running in the first place, no longer "pose[d] an immediate threat to the safety of the officer[]." Accordingly, a jury could

find that even in making a "split-second judgment" based on the circumstances, a reasonable officer would not have resorted to striking Plaintiff with closed fists and applying enough pressure to break his arm when arresting Plaintiff. Common sense, even while making such a "split-second decision" would mandate that where an arrestee surrenders, has no weapon, and puts up no struggle, that force great enough to break the arrestee's arm is unnecessary and disproportionate to the severity of the situation. Additionally, even if a jury found the third factor – severity of the crime – in Jones's favor, the jury would have to weigh all the factors taken together and could reasonably find that the force used was excessive, and, therefore, that the seizure was unreasonable. Therefore, the court overrules Jones's objections. Accordingly, the court finds that Plaintiff has met his burden in establishing the first prong of the qualified immunity analysis.

As noted above, the defendant bears the burden of proving that the right was not clearly established at the time the violation occurred. *See Wilson v. Kittoe*, 337 F.3d 392, 397 (4th Cir. 2003). With respect to the second step, "[t]he relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was lawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). In neither his motion for summary judgment nor in his objections does Jones contend that the right was not clearly established. Accordingly, the court concludes that Defendant has failed to meet his burden as to this prong of the qualified immunity analysis.

### IV. Conclusion

After a careful and thorough review of the record under the appropriate standards, as set forth above, the court adopts the Report (ECF No. 44), which is incorporated herein by reference. Accordingly, pursuant to the parties' stipulation, all federal claims against County

defendants are **DISMISSED**. Additionally, Jones's motion for summary judgment (ECF No. 29) is **DENIED**, and County Defendants' motion for summary judgment (ECF No. 30) is **granted in part and denied in part.** Specifically, County Defendants' motion is **GRANTED** with respect to the claims of negligent training/supervision and failure to provide timely medical care. Furthermore, with respect to Plaintiff's SCTCA excessive force claim, the motion is **GRANTED** with respect to Defendants County of Greenville and Loftis and **DENIED** with respect to Defendant Greenville County Sheriff's Department.

Effectively, this leaves only two remaining claims: (1) Plaintiff's excessive force claim against Defendant Jones pursuant to 42 U.S.C. § 1983; and (2) Plaintiff's excessive force claim against Greenville County Sheriff's Department pursuant to the SCTCA. Because there are no longer any pending cases against Defendants Loftis or County of Greenville, they are terminated from this action.

  **IT IS SO ORDERED.**

                       s/Timothy M. Cain
                       Timothy M. Cain
                       United States District Court Judge

July 15, 2019
Anderson, South Carolina